IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARVIN ANDREWS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 281 |
| ) | |
| TEAMSTERS LOCAL 705, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On September 8, 2009, plaintiff Marvin Andrews ("Andrews") filed his Amended Complaint against defendant International Brotherhood of Teamsters Local 705 ("Local 705") under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") for breach of Local 705's duty of fair representation (Count I). (Dkt. No. 18.)[1] Currently before the court is Local 705's Motion for Summary Judgment (Dkt. No. 36). For the reasons explained below, Local 705's Motion is granted.

BACKGROUND

Local 705 is an unincorporated labor organization doing business in Cook County and representing employees of various employers including Pacific Rail Services ("Pacific Rail").

---

[1] In his Amended Complaint, Andrews also asserted claims against Pacific Rail Services ("Pacific Rail") for breach of contract (Count I) and violations of the Illinois Workers' Compensation Act (Count II). (Dkt. No. 18.) Andrews, however, never served his Amended Complaint on Pacific Rail, and, according to a letter from Pacific Rail's counsel to U.S. Magistrate Judge Arlander Keys, the magistrate judge assigned to this case, "to the extent that any dispute existed between Plaintiff and Defendant Pacific Rail Services, that dispute has been resolved." (Dkt. No. 37 ("Local 705's Mem.") at Ex. 1.) Consequently, only Andrews's § 301 claim against Local 705 (Count I) remains at issue in this litigation.

(Dkt. No 38 ("Local 705's Local R. 56.1(a)(3) Stmt.") ¶ 1.)[2] Pacific Rail is engaged in the business of handling railroad trains and box cars, among other services for the rail industry in Cook County, Illinois. (*Id.* ¶ 5.) Andrews worked for Pacific Rail as a groundman/spotter from the start of his employment in 2004 until his termination on July 17, 2008. (*Id.* ¶¶ 7, 18.) At all relevant times, Andrews has been a member of Local 705, and his employment has been governed by a collective bargaining agreement entered into between Pacific Rail and Local 705. (*Id.* ¶ 6.)

According to Andrews, on July 10, 2008, he injured himself while unlocking railcar hitches, which open and release the trailer being carried on the railcar. (*Id.* ¶ 9, 11.) Specifically, Andrews claims that the hitch on one of the railcars he was unlocking on Track 1703 broke or snapped when he struck his metal bar into the hitch and applied pressure, resulting in him pulling a muscle in his shoulder. (*Id.* ¶ 11.) After the hitch broke, Andrews walked down the track and flagged down his supervisor, Shannon Walker, who picked up Andrews. (*Id.* ¶¶ 12-13.) Andrews explained to Walker that he had injured himself. (*Id.* ¶ 12.) Although Walker suggested that Andrews go home, Andrews stated that going home was not the proper protocol and instead told Walker that he wanted to go to the doctor. (*Id.* ¶ 13.)

After Andrews spoke with Walker, Pacific Rail supervisor John Wendt drove Andrews back to the track. (*Id.* ¶ 14.) Andrews tried to show Wendt the broken hitch but was unable to identify the train car on which he had injured himself. (*Id.* ¶ 14.) Andrews then went to a doctor who diagnosed Andrews as having a pulled shoulder muscle. The doctor did not prescribe any

---

[2] Andrews did not respond to Local 705's Local Rule 56.1(a)(3) Statement of Facts, and Andrews's Local Rule 56.1(b)(3)(C) Statement of Additional Facts does not contradict the following facts asserted by Local 705. Accordingly, under Local Rule 56.1(b)(3)(C), those facts have been deemed admitted for purposes of ruling on Local 705's Motion.

treatment for Andrews (*id.* ¶ 16), and Andrews returned to work the next day with light duty restrictions (*id.* ¶ 17).

Following Andrews's alleged injury, Pacific Rail had inspectors from two independent companies, Burlington Northern Rail and its subcontractor TTX, inspect all the cars on Track 1703 on July 10, 2008. (*Id.* ¶ 15.) These inspectors did not find any defects in the hitches. (*Id.*)

On July 17, 2008, Pacific Rail gave Andrews a letter signed by terminal manager Michael Susnar terminating Andrews's employment on the basis of "proven dishonesty or theft" for dishonestly claiming that a broken hitch caused his alleged injury. (*Id.* ¶ 18; Local 705's Ex. 7, Hearing Tr. 19:8-17, Sept. 17, 2008.) After Andrews received the termination letter, he contacted his Local 705 union steward who assisted Andrews in filing a grievance, which was Grievance No. 161435. (*Id.* ¶ 20.)

Santos Marinez, the Local 705 business agent assigned to Pacific Rail, represented Andrews with respect to Andrews's grievance against Pacific Rail. (*Id.* ¶ 26.) Marinez suggested to Andrews that Andrews write down the events of July 10, 2008, and also document any instances of retaliation by supervisors which Andrews felt had occurred. (*Id.* ¶ 22.)

Before representing Andrews at the Joint Grievance Committee hearing, Marinez went to Andrews's former work site to examine the railcar hitches, as well as any other condition on the railbed which might have contributed to Andrews's injury. (*Id.* ¶ 26.) Marinez also spoke with other persons who might have had evidence that could support Andrews's grievance. (*Id.* ¶ 27.)

The Joint Grievance Committee heard Andrews's case on September 17, 2008, and Andrews attended the hearing. (*Id.* ¶¶ 21, 23.) During the hearing, Marinez gave opening and rebuttal statements and presented evidence on Andrews's behalf, including six exhibits. (*Id.* ¶

23; Hearing Tr. 20:3-33:9; 34:15-4.) After the presentation of evidence at the hearing, Andrews informed the Grievance Committee that he and Local 705 had offered all the evidence that Andrews wanted included in the record. (Local 705's Local R. 56.1(a)(3) Stmt. ¶ 24; Hearing Tr. 44:14-16.) When asked by one of the officials at the hearing if Andrews felt that Local 705 had properly represented him before the Committee, Andrews responded "yes." (Local 705's Local R. 56.1(a)(3) Stmt. ¶ 24; Hearing Tr. 44:17-20.) The Joint Grievance Committee deadlocked on Andrews's grievance with the Pacific Rail and Local 705 members on the Committee evenly divided. (Local 705's Local R. 56.1(a)(3) Stmt. ¶ 28.) Local 705 ultimately decided against proceeding to arbitration on Andrews's grievance. (*Id.* ¶ 31.)

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## ANALYSIS

Under § 301 of the LMRA, union members can "seek relief in federal court when [the] union breaches its duty to represent [its members] fairly." *Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 891-92 (7th Cir. 2010). Section 301 provides "judicial recourse" to a union member "if,

4

during the arbitration process, [the] union completely bungles (or intentionally sabotages) an otherwise meritorious grievance." *Id.* at 892. To prevail on a § 301 claim—often described as a "hybrid" claim—a union member must prove that the "union breached its fiduciary obligation *and* that [the] employer breached the collective bargaining agreement." *Bell v. DaimlerChrysler Corp*, 547 F.3d 796, 804 (7th Cir. 2008) (emphasis in original). Here, Local 705 argues that it is entitled to summary judgment on Andrews's § 301 claim because Andrews cannot prove that the union breached its duty of fair representation.

"A union breaches its duty of fair representation only where its actions in pursuing a member's grievance are 'arbitrary, discriminatory, or in bad faith.'" *Truhlar*, 600 F.3d at 892 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). In this case, Andrews argues in his five-page Opposition to Local 705's Motion that Local 705 acted arbitrarily and in bad faith by (1) not investigating the circumstances of Andrews's termination and (2) giving "a perfunctory, half-hearted effort" during the grievance proceedings. (Dkt. No. 46 ("Andrews's Opp.") at 2.) Based on the undisputed facts, the court agrees with Local 705 that Andrews has failed to present sufficient evidence from which a jury could reasonably find that Local 705 breached its duty of fair representation by acting either arbitrarily or in bad faith.

1. Whether Local 705 Acted Arbitrarily

A union acts arbitrarily when, "'in light of the factual and legal landscape' at the time the union acted, its decision . . . was 'so far outside a wide range of reasonableness, as to be irrational.'" *Truhlar*, 600 F.3d at 892 (quoting *Air Line Pilots*, 499 U.S. at 67). According to the Seventh Circuit, "[t]his is an 'extremely deferential standard' that precludes the courts from 'substituting their judgment for that of the union, even if, with the benefit of hindsight, it appears

5

that the union could have made a better call.'" *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (quoting *Ooley v. Schwitzer Div.*, 961 F.2d 1293, 1302 (7th Cir. 1992)).

      A.      Local 705's Investigation into Andrews's Grievance

Regarding a union's duty to investigate a member's grievance, the Seventh Circuit has explained that "only an investigation that reflects 'an egregious disregard to union members' rights constitutes a breach of the union's duty.'" *Truhlar*, 600 F.3d at 893 (quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995)). Indeed, a union need only provide "some minimal investigation of employee grievances." *Neal*, 349 F.3d at 369 (quoting *Garcia*, 58 F.3d at 1176).

In this case, Andrews argues that Local 705 was arbitrary in its investigation of Andrews's grievance against Pacific Rail because the union did not interview John Wendt, Andrews's supervisor. (Andrews's Opp. 3.) The union, however, is "not held to the standard of the ideal lawyer" but "must only have acted within 'a wide range of reasonableness.'" *Garcia*, 58 F.3d at 1178 (quoting *Air Line Pilots*, 499 U.S. at 67). Here, the undisputed facts demonstrate that Local 705 acted within that "wide range of reasonableness" by performing a sufficient "minimal investigation" into Andrews's grievance.

Specifically, Andrews has not disputed that before the grievance hearing, Marinez, the Local 705 business agent, went to Andrews's former work site and examined the type of hitch that Andrews claims broke and caused his injury. (Local 705's Local R. 56.1(a)(3) Stmt. ¶ 26.) Marinez also investigated additional conditions on the railbed which might have contributed to Andrews's injury. (*Id.*) Andrews similarly has not disputed that Marinez interviewed other individuals who potentially had evidence that could aid Andrews's case. (*Id.* ¶ 27.) Thus, based

on the deference afforded to the union's actions and viewing the undisputed facts in the light most favorable to Andrews, the court finds that a reasonable jury could not conclude that Local 705 acted arbitrarily in investigating Andrews's grievance against Pacific Rail.

B.      Local 705's Representation During the Grievance Proceedings

Andrews also contends that Local 705 acted arbitrarily during the grievance hearing by failing to challenge or question certain witnesses or written statements. Again, the court does not find that Andrews has presented sufficient evidence from which a jury could reasonably determine that Local 705 breached its duty of fair representation.

As reflected by the hearing transcript, Marinez attended the grievance hearing, presented both opening and rebuttal statements to the Joint Grievance Committee, and offered six exhibits to the Committee in support of Andrews's case. (*Id.* ¶ 23; Hearing Tr. 20:3-33:9; 34:15-4.) Perhaps most telling, when asked during the grievance hearing whether Andrews believed that Local 705 properly represented him before the Committee, Andrews answered, "Yes," and acknowledged that he had no other evidence that he would like to present. (Hearing Tr. 44:14-20.) Marinez arguably could have proffered additional evidence or arguments at the hearing, but he was not required to do so. A union's actions are arbitrary only if they fall "so far outside a wide range of reasonableness, as to be irrational." *Truhlar*, 600 F.3d at 892 (quoting *Air Line Pilots*, 499 U.S. at 67). Here, based on the undisputed facts and viewing those facts in the light most favorable to Andrews, the court finds that Andrews cannot prove that Local 705's representation during the grievance hearing was arbitrary.

2.      Whether Local 705 Acted in Bad Faith

Whether a union's actions were made "in bad faith calls for a subjective inquiry and

7

requires proof that the union acted (or failed to act) due to an improper motive." *Neal*, 349 F.3d at 369. In his Opposition, Andrews argues that Local 705 "was completely disingenuous by telling Mr. Andrews . . . they were undertaking a meaningful investigation of his claims when in fact they were doing quite the opposite." (Andrews's Opp. 5.) Notably, Andrews has not identified any statements or evidence in the record supporting Andrews's contention that Local 705 misrepresented the nature of its investigation to Andrews. Contrary to Andrews's assertion that he has "legitimate and significant evidence that [L]ocal 705 engaged [in] duplicitous conduct concerning its representation of Mr. Andrews" (*id.*), the record cited to the court is devoid of such evidence. Consequently, Andrews's has failed to present sufficient evidence to the court from which a jury could reasonably conclude that Local 705 acted in bad faith in its handling of Andrews's grievance.

## CONCLUSION

The court finds that based on the undisputed facts and Marvin Andrews's lack of evidence, a jury could not reasonably conclude that defendant Local 705 breached its duty of fair representation under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by acting either arbitrarily or in bad faith in its representation of Andrews. Consequently, Local 705's Motion for Summary Judgment (Dkt. No. 36) is granted, and judgment is entered in favor of Local 705.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 20, 2010